130 T.C. No. 16

UNITED STATES TAX COURT

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY & SUBSIDIARIES,
Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5426-05.                    Filed June 23, 2008.

P was the common parent of a life-nonlife
consolidated group from 1996 through 2002. When making
its alternative minimum tax (AMT) calculations for
those years, it originally calculated its adjusted
current earnings (ACE) adjustment separately for its
life and nonlife subgroups. After R issued P a notice
of deficiency for 1996 through 1999, P recalculated its
AMT using a revised methodology.

P's revised methodology calculates ACE on a
consolidated basis and does not apply the loss
limitation rules of sec. 1503(c), I.R.C., to
preadjustment alternative minimum taxable income (AMTI)
for purposes of calculating ACE. P's revised
methodology would reduce its ACE adjustment for 2001
and 2002, causing larger alternative tax net operating
losses (ATNOLs) for its nonlife subgroup to be carried
back to prior years. P's revised methodology would

decrease P's deficiencies and cause overpayments for 1997 through 1999.

Held: P must calculate its ACE and ACE adjustment on a consolidated basis.

Held, further, P must use consistent preadjustment AMTIs when calculating its ACE and ACE adjustment.

Jerome B. Libin, James V. Heffernan, Mary E. Monahan, and Jeffrey N. Starkey, for petitioner.

Alan M. Jacobson, Jan E. Lamartine, and William F. Barry, IV, for respondent.

OPINION

GOEKE, Judge: Respondent determined deficiencies in petitioner's Federal income taxes of $12,830,522, $55,903,247, $25,981,117, and $14,249,973 for 1996, 1997, 1998, and 1999, respectively. Petitioner disputes $13,625 of the deficiency for 1996 and the entire deficiency for each of 1997, 1998, and 1999. Petitioner claims overpayments of $156,917,448, $214,471,611, and $138,570,516 for 1997, 1998, and 1999, respectively.

Petitioner raised seven issues in its petition, five of which have been settled. Of the two remaining issues this Opinion addresses solely the calculation of petitioner's adjusted current earnings (ACE) adjustment for purposes of computing its alternative minimum tax (AMT) (the AMT issue). Resolution of the AMT issue requires the Court to decide two questions:

(1)  Whether a consolidated group consisting of at least one mutual casualty or life insurance company and one other corporation (a life-nonlife consolidated group) must calculate its ACE adjustment under section 56(g)[1] on a consolidated or subgroup basis.  We hold that a life-nonlife consolidated group is entitled to and must calculate its ACE adjustment on a consolidated basis; and

(2)  when a life-nonlife consolidated group calculates its ACE adjustment, whether application of the loss limitation rules of section 1503(c) and section 1.1502-47, Income Tax Regs. (loss limitation rules), allows it to use one method to calculate preadjustment alternative minimum taxable income (AMTI) for purposes of calculating ACE under section 56(g)(3) and a different method to calculate preadjustment AMTI for purposes of comparing preadjustment AMTI with ACE under section 56(g)(1).  We hold that a life-nonlife consolidated group must use the same method to calculate preadjustment AMTI for both purposes.

## Background

The parties submitted this case fully stipulated under Rule 122.  The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.  Petitioner is an Illinois

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

mutual property and casualty insurance company taxed as a corporation. Its principal office is in Bloomington, Illinois.

During the years 1996 through 2002 petitioner was the common parent of an affiliated group of corporations that included two domestic life insurance companies taxable under section 801 (life subgroup) and a varying number of domestic nonlife insurance companies and other domestic corporations (nonlife subgroup, and together with the life subgroup, consolidated group).

Pursuant to an election made for 1984 under section 1504(c)(2), the consolidated group has filed life-nonlife consolidated Federal income tax returns (returns) for 1984 and all subsequent years. Petitioner timely filed returns for 1996 through 2002 on Forms 1120-PC, U.S. Property and Casualty Insurance Company Income Tax Return. The Forms 1120-PC for the consolidated group included both the life and nonlife subgroups. For 2001 and 2002 petitioner subsequently filed Forms 1120X, Amended U.S. Corporation Income Tax Return, for the consolidated group.

For 1996 through 1998 petitioner's returns reflected a liability for regular income tax which was reduced by AMT credits under section 53. For 1999 and 2000, petitioner's returns reflected a liability for AMT under section 55. For 2001 and 2002 petitioner's returns reflected a liability for regular

income tax that was reduced by AMT credits under section 53. Petitioner paid the taxes shown on its returns for each year.

For each of the years 1996 through 2002 petitioner made its AMT calculations on Form 4626, Alternative Minimum Tax-- Corporations. For purposes of calculating the consolidated group's AMT for 1996 through 2002, petitioner prepared supporting schedules reflecting figures for the separate companies and for the life and nonlife subgroups.

The Forms 4626 filed for taxable years 1996 through 1999 show that petitioner had positive regular taxable income and AMTI[2] for both subgroups. For that reason, petitioner claims that the amounts shown on the Forms 4626 for 1996 through 1999 represented an aggregate of the amounts computed for both subgroups.

On the Form 4626 for 2000, petitioner reflected the AMT computations shown on a supporting schedule that included an ACE adjustment. Although the supporting schedule showed a negative regular taxable income for the nonlife subgroup and a positive amount of regular taxable income for the life subgroup, the schedule showed positive AMTI for both subgroups as a result of the ACE adjustment. Because both subgroups had positive AMT income, petitioner did not apply the loss limitation rules, which

---

[2] The AMTI reported on Forms 4626 is AMTI as defined in sec. 55(b)(2), including the ACE adjustment and the alternative tax net operating loss deduction.

generally require a taxpayer to calculate its consolidated taxable income by aggregating the taxable income of both subgroups only if the taxable income of both subgroups is positive. Therefore, the amounts shown on the Form 4626 for 2002 were an aggregate of the amounts computed for both subgroups.

On the Form 4626 for 2001 petitioner reflected the AMT computations shown on the supporting schedules that included an ACE adjustment. The supporting schedules showed negative regular taxable income and AMT income for the nonlife subgroup and positive regular taxable income and AMT income for the life subgroup. The respective nonlife consolidated net operating losses (NOLs) for regular taxable income and AMT purposes were carried back and deducted in the determination of nonlife consolidated regular taxable income and AMT income in prior years. The respective nonlife consolidated net operating losses for regular taxable income and AMT purposes for 2001 thus could not be set off against the respective positive life subgroup regular taxable income and AMT income for 2001. Because the nonlife subgroup's AMT income was negative, petitioner applied the loss limitation rules, and the amounts shown on the Form 4626 for 2001 represented solely the amounts computed for the life subgroup.

On the Form 4626 for 2002 petitioner reflected the AMT computations shown on the supporting schedules that included an

ACE adjustment for the year.  The supporting schedules showed negative regular taxable income and AMT income for the nonlife subgroup and positive regular taxable income and AMT income for the life subgroup.  For regular tax purposes, a portion of the nonlife consolidated NOL for 2002 was carried back and deducted in the determination of nonlife consolidated regular taxable income in prior years, and another portion of the nonlife consolidated NOL for the year was set off against life subgroup regular taxable income for 2002, subject to the percentage limitations of section 1503(c).  For AMT purposes the entire amount of the nonlife consolidated NOL for 2002 was carried back and deducted in the determination of nonlife consolidated AMT income in prior years.  Because the nonlife subgroup's AMT income was negative, petitioner applied the loss limitation rules, and the amounts shown on the Form 4626 for 2002 represented solely the amounts computed for the life subgroup.  The allowable regular tax setoff of nonlife subgroup loss against life subgroup income was not reflected on Form 4626 for 2002.

Respondent audited petitioner's returns for 1996 through 1999 and issued a notice of deficiency with respect to those years on December 22, 2004.  The notice of deficiency did not contain any adjustments with respect to the AMT issue.

Petitioner originally calculated its AMT by making separate calculations for ACE and the ACE adjustments for each subgroup.

An illustration of petitioner's original methodology for 2001 and 2002 is provided in the appendix to this Opinion.[3]  Petitioner first calculated post-ACE adjustment AMTIs (before the alternative tax net operating loss (ATNOL) deduction) for both the life and nonlife subgroups.  For years 1996 through 2000 both subgroups had positive post-ACE adjustment AMTIs.  Therefore, the post-ACE adjustment AMTI of the consolidated group was the sum of the post-ACE adjustment AMTIs of the two subgroups.  For 2001 and 2002 the nonlife subgroup had negative post-ACE adjustment AMTIs.  Therefore, petitioner applied the loss limitation rules and treated the post-ACE adjustment AMTI of the life subgroup as the post-ACE adjustment AMTI of the entire consolidated group.  Accordingly, in the illustrations of petitioner's original calculations in the appendix, the "Consolidated" column is identical to the "Life Subgroup" column for 2001 and 2002.  Petitioner used the ATNOL of the nonlife subgroup to offset nonlife subgroup income in prior years pursuant to the loss limitation rules.

    After it filed its returns, petitioner recalculated its ACE adjustments by calculating a single ACE and ACE adjustment for the entire consolidated group (petitioner's revised methodology).  Petitioner then allocated the consolidated ACE adjustment between

-------

    [3] All of the figures on the charts in the appendix are for illustrative purposes only.

the life and nonlife subgroups according to the section 56(g)(4) adjustments attributable to each subgroup. Petitioner's revised methodology also differs from its original calculations in that it does not apply the loss limitation rules to preadjustment AMTI when calculating ACE but continues to apply the loss limitation rules to preadjustment AMTI when comparing preadjustment AMTI with ACE. An illustration of petitioner's revised methodology is provided in the appendix.

Petitioner's revised methodology, if accepted, would create negative ACE adjustments to be taken into account in the calculation of the nonlife subgroup consolidated ATNOLs for 2001 and 2002, which would increase the ATNOLs for the nonlife subgroup for those years. This would create carrybacks of nonlife subgroup ATNOLs from 2001 and 2002 in excess of the carrybacks initially claimed on the Forms 1139, Corporation Application for Tentative Refund, that petitioner filed for those years. As a result, petitioner's deficiency for 1996 would be reduced, its deficiencies for 1997 through 1999 would be eliminated, and petitioner would have made overpayments in 1997, 1998, and 1999 that would be largely attributable to the AMT issue. Petitioner timely filed its petition on March 21, 2005, reflecting its revised methodology.

## Discussion

### I. Legal Background

#### A. The AMT

Congress expanded the AMT as a part of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, in order to prevent taxpayers with substantial economic income from avoiding significant tax liability by using exclusions, deductions, and credits. See Snap-Drape, Inc. v. Commissioner, 105 T.C. 16, 21 (1995), affd. 98 F.3d 194 (5th Cir. 1996). The AMT equals the excess of the tentative minimum tax over the regular tax for the year. Sec. 55(a). For corporations, the tentative minimum tax is 20 percent of so much of AMTI as exceeds the exemption amount reduced by the AMT foreign tax credit for the year. Sec. 55(b)(1)(B). AMTI is the taxable income of the taxpayer for the year determined with the adjustments provided in sections 56 and 58 and increased by the amount of items of tax preference in section 57. Sec. 55(b)(2).

Section 56(g)(1) governs the ACE adjustment to AMTI. Preadjustment AMTI is the taxpayer's AMTI determined under section 55(b)(2) but before adjustments for ACE, ATNOL, or the alternative energy deduction. Sec. 1.56(g)-1(a)(6)(i), Income Tax Regs. ACE equals AMTI plus or minus the adjustments provided in section 56(g)(4) but without regard to the rest of section 56(g) or the ATNOL deduction. Sec. 56(g)(3). Section 56(g)(1)

provides that the AMTI of any corporation for the taxable year shall be increased by 75 percent of the excess of the corporation's ACE over the corporation's preadjustment AMTI. Section 56(g)(2) also allows a negative ACE adjustment if a taxpayer's AMTI exceeds its ACE, but only to the extent of the excess of aggregate positive ACE adjustments over aggregate negative ACE adjustments for the taxpayer in prior years. For purposes of this Opinion, post-ACE adjustment AMTI is preadjustment AMTI plus or minus the ACE adjustment, but without any ATNOL adjustments.

The disputes in this case involve the calculation of the ACE adjustment by life-nonlife consolidated groups. The first issue is whether ACE and the ACE adjustment may be calculated on a consolidated basis (a single ACE and ACE adjustment for the entire consolidated group) or on a subgroup basis (two ACEs and ACE adjustments, one for the life subgroup and one for the nonlife subgroup). The second issue is whether life-nonlife consolidated groups must use the same AMTI when calculating ACE in section 56(g)(3) as when comparing AMTI to ACE to calculate the ACE adjustment in section 56(g)(1) and (2).

B. Consolidated Returns

Generally, consolidated groups calculate a single amount of taxable income (consolidated taxable income or CTI) and a single amount of tax liability. Secs. 1.1502-2, 1.1502-11, Income Tax

Regs.  To calculate CTI, each member computes its separate taxable income, subject to certain modifications listed in section 1.1502-12, Income Tax Regs.  Sec. 1.1502-11(a)(2), Income Tax Regs.  The separate taxable incomes of the members are then aggregated with other items listed in section 1.1502-11(a), Income Tax Regs.  A single consolidated ATNOL is generally calculated for the consolidated group.  Secs. 1.1502-11(a)(2), 1.1502-21, Income Tax Regs.

Section 1501 permits groups with both life and nonlife members to file consolidated returns if an appropriate election is made under section 1504(c).  See State Farm Mut. Auto. Ins. Co. v. Commissioner, 119 T.C. 342, 345-346 (2002) (State Farm I), affd. 105 Fed. Appx. 67 (7th Cir. 2004), for a more detailed background on life-nonlife consolidated returns.  However, section 1503(c) limits the ability of consolidated groups to use losses from the nonlife subgroup to offset the income of the life subgroup.  It provides that if the nonlife subgroup has an NOL for the year, the NOL must first be carried back and used to offset income of the nonlife subgroup in prior years.  To the extent that the NOL is not fully absorbed by nonlife income it may be used to offset life income for the year, but nly to the extent of 35 percent of the NOL or 35 percent of the taxable income of the life subgroup, whichever is less.  The unused

portion of the nonlife subgroup's NOL is available as a carryover to future years.

Section 1503(a) requires a taxpayer filing a consolidated return to determine its tax in accordance with the regulations under section 1502. Section 1.1502-47, Income Tax Regs., generally adopts a "subgroup method" for determining CTI of life-nonlife consolidated groups. Sec. 1.1502-47(a)(2)(i), Income Tax Regs. It divides the consolidated group into the "life subgroup", which consists of members of the group that are life insurance companies as defined in section 801 (life companies), and the "nonlife subgroup", which consists of all members that are not life companies. Sec. 1.1502-47(d)(1), (6) through (9), Income Tax Regs. The CTI for the consolidated group is the sum of: (1) Nonlife CTI, as set off by allowable life losses; (2) consolidated partial life insurance company taxable income (LICTI), as set off by allowable life losses; and (3) amounts subtracted under section 815 from life policyholders' surplus accounts (phase 3 income). Sec. 1.1502-47(g), Income Tax Regs.

Nonlife CTI aggregates the separate taxable incomes of the nonlife members, with specified consolidated adjustments, and incorporates reductions for current year nonlife consolidated NOL and for nonlife consolidated net operating and capital loss carrybacks and carryovers. Sec. 1.1502-47(h), Income Tax Regs.; see also secs. 1.1502-11, 1.1502-12, 1.1502-21A, 1.1502-22A,

Income Tax Regs. Consolidated partial LICTI is generally the aggregate of the separate net income of the life members reduced by life loss carrybacks and carryovers from other years. Secs. 801-812, 818(e); see also State Farm I at 347. The taxable income of each subgroup may then be set off by losses of the other subgroup in accordance with section 1.1502-47(m) and (n), Income Tax Regs.

Section 1.1502-47(q), Income Tax Regs., provides that the life-nonlife regulations (section 1.1502-47, Income Tax Regs.) preempt any inconsistent rules in the other consolidated return regulations. However, this preemption rule applies only where the life-nonlife regulations so provide; in all other cases, the general consolidated return rules apply. Sec. 1.1502-47(r), Income Tax Regs.

C.  State Farm I

The issues before us are matters of first impression in this Court. However, the Court previously addressed the interaction between the AMT and life-nonlife consolidated groups in State Farm I. While the Court in State Farm I did not consider the calculation of the ACE adjustment by life-nonlife consolidated groups, petitioner argues that the Court's prior decision is persuasive, and we agree.

During the years at issue in State Farm I, 1987 and 1989, section 56(f) required a "book income adjustment", which has

since been repealed and replaced by the ACE adjustment discussed above.[4]  State Farm I at 348.  Section 56(f) provided:

> SEC. 56(f).  Adjustments for Book Income of Corporations.--
>
> (1) In general.--The alternative minimum taxable income of any corporation for any taxable year beginning in 1987, 1988, or 1989 shall be increased by 50 percent of the amount (if any) by which--
>
> > (A) the adjusted net book income of the corporation, exceeds
> >
> > (B) the alternative minimum taxable income for the taxable year (determined without regard to this subsection and the alternative tax net operating loss deduction).
>
> (2) Adjusted net book income.--For purposes of this subsection--
>
> > (A) In general.--The term "adjusted net book income" means the net income or loss of the taxpayer set forth on the taxpayer's applicable financial statement, adjusted as provided in this paragraph.
>
> *     *     *     *     *     *     *
>
> > (C) Special rules for related corporations.--
> >
> > > (i) Consolidated returns.--If the taxpayer files a consolidated return for any taxable year, adjusted net book income for such

---

[4] Sec. 56(f) was enacted as part of the Tax Reform Act of 1986, Pub. L. 99-514, sec. 701(a), 100 Stat. 2320, and repealed by the Omnibus Budget Reconciliation Act of 1990, Pub. L. 101-508, sec. 11801(a)(3), 104 Stat. 1388-520.

> taxable year shall take into account items on the taxpayer's applicable financial statement which are properly allocable to members of such group included on such return.

While the book income adjustment closely resembled the ACE adjustment, it was different in two ways that are relevant here.

First, the book income adjustment could not be negative. Section 56(f) provided for an increase in AMTI when the adjusted book income exceeded AMTI but did not provide for a decrease in AMTI when the reverse was true. By contrast, the ACE adjustment may be negative when preadjustment AMTI exceeds ACE, but the reduction in AMTI may not exceed the excess (if any) of the aggregate positive ACE adjustments for prior taxable years over the aggregate negative ACE adjustments for prior taxable years. Sec. 56(g)(2)(b). The fact that the book income adjustment could not be negative meant that when the net book income of one of a taxpayer's subgroups was smaller than its AMTI (which would create a negative book income adjustment but for the absence of a provision allowing such adjustments) and the other subgroup had a positive book income adjustment, the taxpayer could take advantage of what would have been a negative book income adjustment for the first subgroup only if it could aggregate the book income adjustments of the subgroups. This may still be a problem for some consolidated life-nonlife groups that are

subject to the current ACE adjustment regime if ACE is calculated on a subgroup basis, but only if a subgroup does not have sufficient positive ACE adjustments in prior years to absorb a negative ACE adjustment.

Second, the book income adjustment was a percentage of the difference between the taxpayer's adjusted net book income and its AMTI instead of the difference between ACE and AMTI. Unlike ACE, a taxpayer's adjusted net book income had no relation to AMTI and was based in financial accounting principles instead of tax principles. Therefore, there was no question of whether the same AMTI was used in calculating the net income or loss on the taxpayer's financial statement as was used in calculating the book income adjustment--AMTI was only used for the latter purpose.

In State Farm I, petitioner argued that the book income adjustment should be computed on a consolidated basis, with a single adjustment for the entire group, on the basis that the statute and the regulations generally referred to a single taxpayer and its single "consolidated net book income". State Farm I at 349-350. Respondent argued that the book income adjustment should be calculated on a subgroup basis, with separate book income adjustments for each subgroup, on account of the need to respect the loss limitation rules. Id.

The Court found petitioner's argument more persuasive. While neither the statute nor the regulations specifically addressed the calculation of the book income adjustment by life-nonlife consolidated groups, all of the references to the book income adjustment suggested that consolidated groups should calculate a single consolidated book income adjustment based on the taxable income of the consolidated group and the consolidated adjusted net book income derived from the financial statement of the common parent. Id. at 351; see also sec. 1.56-1(b)(3)(i) through (iii), (c)(5)(i), Income Tax Regs. The Court was also persuaded by an example in the regulations that indicated that members of a consolidated group were to calculate their book income adjustment on a consolidated basis, even when the AMTI of one of the members exceeded its net book income and another member had a positive book income adjustment. State Farm I at 351 (citing section 1.56-1(a)(4), Example (4), Income Tax Regs.).

While the plain language of the Code and the regulations made it clear that for most consolidated groups the book income adjustment should be calculated on a consolidated basis, the Court also considered whether an exception to this general rule applied to life-nonlife groups. Id. The Court considered the relationship between the operating loss rules in the regular tax and AMT systems, and explained:

> Two principles thus emerge from the confluence of
> the organization and the underlying legislative history

of section 56.  First, the book income adjustment must be taken into account in computing the ATNOL arising in a given year and available for carrying to other years or the amount of AMTI available in a given year for absorbing amounts carried from other years.  Second, the loss limits of section 1503(c) must be respected in calculating such ATNOL or AMTI.  Neither party disputes these premises. * * * [Id. at 352.]

The Court then faced the question of whether the treatment of the subgroups as separate groups for purposes of applying the loss limitation rules required that this framework be maintained only up to calculation of the book income adjustment (as petitioner argued) or through it (as respondent argued).  Id. at 353.  The Court concluded that because the general rule is to calculate the book income adjustment of a consolidated group on a consolidated basis, and section 1.1502-47, Income Tax Regs., preempts the general consolidated return rules for calculating taxable income, not for calculating the book income adjustment, the general rule for calculating book income adjustments on a consolidated basis prevailed.  Id.; sec. 1.1502-47(q) and (r), Income Tax Regs.  The Court noted that the AMT regulations were promulgated after those for life-nonlife groups and the Commissioner had been made aware of this issue by a comment received after the issuance of temporary AMT regulations.  State Farm I at 354; see also Field Serv. Adv. Mem. TR-45-1815-95 (Apr. 10, 1996).

The Court recognized that calculating the book income adjustment on a consolidated basis could make it more difficult to apply the loss limitation rules but noted that allocation of

the consolidated book income adjustment between the subgroups was a satisfactory solution.  State Farm I at 355.

After the Court filed its Opinion in State Farm I, a dispute arose during the submission of calculations pursuant to Rule 155 regarding the calculation of preadjustment AMTI.  The parties disputed the meaning of the statement in the Court's Opinion that the definition of preadjustment AMTI "implies the regular taxable income of the full consolidated group."  Id. at 351.  Petitioner interpreted this to mean that preadjustment AMTI should be based on the amount of taxable income that would be calculated for the consolidated group under the regular tax regime.  Because the nonlife subgroup had a net operating loss in 1989, petitioner applied the loss limitation rules and calculated its preadjustment AMTI as including only consolidated partial LICTI. By contrast, respondent aggregated the taxable incomes of the subgroups, essentially applying the general rule that applies to consolidated groups in section 1.1502-11, Income Tax Regs.

The Court agreed with petitioner and held:

> the text of section 1.56-1(b)(3), Income Tax Regs., as well as the general operation of the AMT regime, suggests as a starting point the taxable income of the group as computed for regular tax purposes. * * * Further, although the life-nonlife provisions in section 1.1502-47, Income Tax Regs., do not preempt the AMT regulations, they do preempt inconsistent rules in sections 1.1502-1 through 1.1502-80, Income Tax Regs. Secs. 1.1502-47(a)(4), (q), (r), Income Tax Regs. Resort to section 1.1502-11, Income Tax Regs., is thus not justified. [State Farm I Rule 155 decision dated July 23, 2003.]

Respondent appealed the Court's State Farm I decision, and the U.S. Court of Appeals for the Seventh Circuit affirmed.  State Farm Mut. Auto. Ins. Co. v. Commissioner, 105 Fed. Appx. 67 (7th Cir. 2004).  The Court of Appeals adopted the reasoning set forth in this Court's Opinion and noted that the references to "taxable income of the consolidated group" and "Consolidated Returns" in section 1.56-1(b)(3)(iii), Income Tax Regs., and section 56(f)(2)(C)(I), respectively, supported the Court's rejection of respondent's subgroup approach.  Id. at 68-69.  The Court of Appeals stated that respondent's argument was "essentially equitable and outcome-based" and declined to override the express language of the regulations.  Id. at 69.

II.  The Issues

Petitioner and respondent disagree on two issues:  (1) Whether the ACE adjustment under section 56(g) should be computed by treating the nonlife and life subgroups as separate groups or a single consolidated group; and if they are to be treated as a consolidated group, whether they should be consolidated using the principles of section 1.1502-11 or 1.1502-47, Income Tax Regs.; and (2) whether the loss limitation rules apply to AMTI for purposes of both comparing AMTI with ACE and computing ACE.

While petitioner and respondent disagree on how to calculate the ACE adjustment for all of the years 1996 through 2002, their calculations yield the same result for 1996 through 2000 because

both subgroups had positive post-ACE adjustment AMTIs for each of those years.  Therefore, this analysis focuses on 2001 and 2002 because those years best illustrate the divergences in the parties' methodologies.  However, our decision is equally applicable to 1996 through 2000.  Furthermore, while petitioner and respondent disagree on whether the adjustments under section 56(g)(4) should be calculated on a consolidated or subgroup basis, they agree that the amounts of the adjustments under section 56(g)(4) should first be calculated for each company, and they agree on the results of those calculations.

III.  Calculation of ACE and the ACE Adjustment

Petitioner's position is that its ACE adjustment for 1996 through 2002 should be calculated using a consolidated methodology.  After it filed its returns for those years, petitioner revised its computations to reflect its current position.  Petitioner has not filed any return for 1996 through 2002 in which the ACE adjustment was calculated according to its current position.

Respondent's position is that calculation of the ACE adjustment, including calculation of the consolidated preadjustment AMTI for each of the years 1996 through 2002, should be determined on a subgroup basis by treating each of the subgroups as a separate consolidated group.  Alternatively, respondent's position is that a consolidated method may be used

to calculate the ACE adjustment as long as a consistent amount for preadjustment AMTI is used.

Petitioner argues that a life-nonlife consolidated group must make its ACE adjustment on a consolidated basis because the general rule for consolidated groups is that the ACE adjustment is made on a consolidated basis and nothing in the Code or the regulations preempts this rule as it applies to life-nonlife consolidated groups. See sec. 1.1502-47(q) and (r), Income Tax Regs. Furthermore, petitioner argues that the legislative history of section 56(g), the pertinent regulations, and State Farm I support its position that the ACE adjustment be made on a consolidated basis.

For consolidated groups, the ACE regulations provide that positive ACE adjustments are calculated as follows:

> (n) Adjustment for adjusted current earnings of consolidated groups--(1) Positive adjustments.--For taxable years beginning after December 31, 1989, the alternative minimum taxable income of a consolidated group (as defined in § 1.1502-1T) is increased by 75 percent of the excess, if any, of--
>
> (i) The consolidated adjusted current earnings for the taxable year, over
>
> (ii) The consolidated pre-adjustment alternative minimum taxable income for the taxable year. [Sec. 1.56(g)-1(n)(1), Income Tax Regs.; emphasis added.]

The regulations also provide that negative ACE adjustments are similarly calculated by reference to "consolidated" amounts. Sec. 1.56(g)-1(n)(2), Income Tax Regs. However, the section

56(g) regulations make no reference to life-nonlife subgroups in particular.  See sec. 1.56(g)-1(n), Income Tax Regs.  Section 1.1502-1T, Temporary Income Tax Regs., 55 Fed. Reg. 9434 (Mar. 14, 1990), has been replaced by section 1.1502-1(h), Income Tax Regs., which defines a "consolidated group" as "a group filing (or required to file) consolidated returns for the tax year."[5] The parties do not dispute that petitioner's life and nonlife subgroups were part of a single consolidated group that was required to file a single consolidated return for each of the taxable years 1996 through 2002.  While there are now proposed regulations that provide additional guidance on how consolidated groups should calculate the ACE adjustment, section 1.1502-55, Proposed Income Tax Regs., 57 Fed. Reg. 62257 (Dec. 30, 1992), like the current regulations they do not provide any particular guidance for life-nonlife consolidated groups.

Petitioner argues that the general rule applies to life-nonlife subgroups because nothing in section 1.1502-47, Income Tax Regs., preempts it.  Section 1.1502-47(q), Income Tax Regs., provides that the life-nonlife regulations preempt any inconsistent consolidated return regulations (specifically sections 1.1502-0 through 1.1502-80, Income Tax Regs.).  However,

---

[5] Sec. 1.1502-1T, Temporary Income Tax Regs., was originally published on Mar. 14, 1990.  T.D. 8294, 1990-1 C.B. 66.  When finalized on Nov. 19, 1990, the regulation was redesignated sec. 1.1502-1(h), Income Tax Regs.  T.D. 8319, 1990-2 C.B. 57.  The temporary and final regulations are identical.

there is no reference to the ACE adjustment in the consolidated return regulations for the life-nonlife regulations to preempt. Furthermore, section 1.1502-47(r), Income Tax Regs., provides that life-nonlife consolidated groups must follow the general rules that apply to consolidated groups unless the life-nonlife regulations specifically provide otherwise.

Petitioner also argues that the legislative history of section 56(g) supports its methodology. The 1986 conference report states:

> The determination of whether a consolidated group is eligible to decrease alternative minimum taxable income as a result of alternative minimum taxable income exceeding adjusted current earnings is expected to be made at the consolidated level. [H. Conf. Rept. 99-841 (Vol. II), at II-278 (1986), 1986-3 C.B. (Vol. 4) 1, 278; emphasis added.]

This history indicates that Congress intended that members of a consolidated group that had perpetually negative ACE adjustments would be allowed to consolidate their ACE adjustments with those of the rest of the group. There is no indication that Congress intended to deny this privilege to life-nonlife consolidated groups. In fact, the conference report contains a discussion of special rules for life insurance companies making an ACE adjustment (none of which are relevant in this case) a few pages before the text quoted above, suggesting that Congress was aware of the problems that arise when life insurance companies make ACE adjustments but that Congress did not believe that there was a

need to make special ACE rules for life-nonlife subgroups.  Id. at II-277, 1986-3 C.B. (Vol. 4) at 277.

Petitioner also argues that State Farm I should guide our decision because the book income adjustment and the ACE adjustment parallel each other.  Just as was true for the book income regulations, the Commissioner issued ACE regulations that clearly call for a consolidated group to make a single consolidated ACE adjustment and that are silent as to whether an exception is made for life-nonlife groups.  Sec. 1.56(g)-1(n)(1), Income Tax Regs.

We agree that the Court's decision in State Farm I is also instructive here.  While, as respondent points out, State Farm I dealt with a statute that has been repealed and did not address the ACE adjustment, the book income adjustment and the ACE adjustment are similar in three important ways:  (1) Both adjustments were intended to serve the same purpose--to tax profits that are reported for financial accounting purposes but would otherwise be untaxed, see H. Conf. Rept. 99-841 (Vol. II), supra at II-273 to II-274, 1986-3 C.B. (Vol. 4) at 273-274; (2) both adjustments are calculated on a consolidated basis for regular consolidated groups, see secs. 1.56-1(a)(3), 1.56(g)-1(n)(1), Income Tax Regs.; and (3) there is nothing in the Code, the regulations, or any legislative history that indicates that the adjustments should be calculated differently depending on

whether the consolidated group is a life-nonlife consolidated group. Because it is possible to give the loss limitation rules effect while calculating ACE on a consolidated basis by allocating the ACE adjustment when the loss limitation rules apply, as illustrated by respondent's alternative methodology in the appendix, there is no reason to treat life-nonlife consolidated groups differently from other consolidated groups in the absence of an express directive in the Code or the regulations. See sec. 1.1502-47(q) and (r), Income Tax Regs.

While acknowledging that neither the Code nor the regulations provide a specific method for calculating the ACE adjustment for a life-nonlife consolidated group, respondent argues that because section 1.1502-47, Income Tax Regs., requires a subgroup approach for life-nonlife consolidated groups for regular tax purposes, using the subgroup method for the ACE adjustment best parallels that regime. In response to arguments that section 1.1502-47, Income Tax Regs., is inconsistent with the usual method of consolidation, the drafters of the regulations noted that "it is section 1503(c)(1) which is inconsistent with the basic principle of consolidation and, therefore, the usual method of consolidation is not really relevant." Preamble to the final regulations, T.D. 7877, 1983-1 C.B. 207, 211. The drafters explained that "To a large extent, the nonlife members and the life members are treated as if they

were two separate groups with certain exceptions". Id., 1983-1 C.B. at 210. Therefore, the usual rules that apply to other consolidated groups do not necessarily apply to life-nonlife consolidated groups. Respondent argues that calculation of the ACE adjustment is one of the situations where the usual rules that apply to most consolidated groups do not apply to life-nonlife consolidated groups.

Respondent argues further support for his position is found in section 1.55-1(a), Income Tax Regs., which states:

> (a) General rule for computing alternative minimum taxable income.--Except as otherwise provided by statute, regulations, or other published guidance issued by the Commissioner, all Internal Revenue Code provisions that apply in determining the regular taxable income of a taxpayer also apply in determining the alternative minimum taxable income of the taxpayer.

Section 1.56(g)-1(a)(5), Income Tax Regs., similarly provides that all rules that apply for purposes of determining regular taxable income also apply in determining ACE. Because section 1.1502-47(g), Income Tax Regs., requires the subgroup method for determining CTI for regular tax purposes, respondent argues that the subgroup method also applies for determining the ACE adjustment, which constitutes part of a taxpayer's post-ACE adjustment AMTI.

However, while AMTI is essentially the AMT's equivalent to CTI and therefore it is appropriate to apply section 1.1502-47(g), Income Tax Regs., when calculating preadjustment AMTI,

there is no regular tax provision that is equivalent to the ACE adjustment. Some of the adjustments in section 56(g)(4) are based on regular tax provisions, but the ACE adjustment itself simply has no regular tax counterpart. It does not follow from the fact that AMTI must be calculated on a subgroup basis that ACE must also be calculated on a subgroup basis in the absence of any supporting authority. Respondent's alternative methodology illustrates that ACE can be calculated on a consolidated basis and then allocated between the subgroups in order to arrive at accurate post-ACE adjustment AMTIs for each subgroup. In the absence of any clear guidance on exactly how to calculate ACE, petitioner's method is reasonable except for that fact that, as discussed in the next section, petitioner uses inconsistent preadjustment AMTIs when calculating ACE. See Gottesman & Co. v. Commissioner, 77 T.C. 1149, 1157-1158 (1981).

Respondent also argues that the subgroup methodology is necessary in order to give effect to the loss limitation rules. As discussed in section IV. C., the subgroup method and the loss limitation rules must be respected when calculating AMT. For that reason, post-ACE adjustment AMTI must be calculated for each subgroup to determine whether the loss limitation rules apply. Even if a taxpayer ultimately calculates its AMT by aggregating the income, adjustments, and other tax items for both subgroups, the taxpayer must first calculate post-ACE adjustment AMTI for

each of the subgroups to determine whether either subgroup has a negative separate post-ACE adjustment AMTI, which would mean that the taxpayer would have to apply the loss limitation rules and treat its consolidated AMTI as the AMTI of the subgroup with positive separate post-ACE adjustment AMTI. However, calculating separate post-ACE adjustment AMTIs for the subgroups does not require that the taxpayer also calculate a separate ACE adjustment for each subgroup. As illustrated by petitioner's revised methodology for 2001 and 2002, a taxpayer may calculate separate post-ACE adjustment AMTIs for the subgroups using a single ACE adjustment by allocating the ACE adjustment between the subgroups. Therefore, it is not necessary to adopt a subgroup methodology for calculating the ACE adjustment in order to calculate post-ACE adjustment AMTIs for each subgroup and give effect to the loss limitation rules.

Respondent also argues that the preamble to section 1.1502-55, Proposed Income Tax Regs., 57 Fed. Reg. 62251 (Dec. 30, 1992), provides guidance for life-nonlife consolidated groups and supports his methodology. The preamble states:

> The Service believes that Congress generally intended the AMT and adjusted current earnings (ACE) systems to be separate from, and parallel to, the regular tax system. * * * Accordingly, under the separate and parallel principle, all of the provisions of the Internal Revenue Code (Code) and regulations apply in determining consolidated alternative minimum taxable income (AMTI) and consolidated ACE unless the Service provides otherwise in regulations or other guidance. * * *

The preamble further explains that the proposed regulations do not specifically address life-nonlife consolidated groups, but the rules of section 1.1502-47, Income Tax Regs., apply to consolidated groups under the AMT and ACE systems.

While we agree that section 1.1502-47, Income Tax Regs., continues to apply under the AMT and ACE systems and therefore AMTI must be calculated for each subgroup in order to apply the loss limitation rules, it does not necessarily follow that ACE must be calculated on a subgroup basis. The preamble to the proposed regulation specifically mentions life-nonlife consolidated groups, yet it does not create any special rules for calculating ACE for life-nonlife consolidated groups.

Respondent also argues that the requirement in section 1.1502-47(s), Income Tax Regs., that the nonlife subgroup file a separate Form 1120, U.S. Corporation Income Tax Return, or Form 1120-M, U.S. Mutual Insurance Company Income Tax Return, and the life subgroup file a separate Form 1120-L, U.S. Life Insurance Company Income Tax Return, supports his argument that ACE must be calculated by subgroup. If petitioner had filed separate Forms 1120 for each of the subgroups, it would have also prepared and filed separate Forms 4626 for each subgroup. If petitioner had prepared and filed separate Forms 4626, respondent argues that petitioner would have calculated separate ACE adjustments for

each subgroup because Form 4626 has lines for the corporation's ACE adjustment.

We do not find that section 1.1502-47(s), Income Tax Regs., carries this much significance. As suggested in State Farm I and as illustrated by the parties' calculations in the appendix, petitioner may calculate a consolidated ACE adjustment and then allocate it between the two subgroups. The amount of the ACE adjustment allocated to each subgroup could be used to complete each subgroup's Form 4626.

Respondent also argues that because Congress enacted section 1503(c) in 1976[6] and the AMT in 1986,[7] it must have been aware of subgroups when it created the rules for making an ACE adjustment. Further, it most likely assumed that ACE calculations would be computed by subgroup and that no separate explanation for life-nonlife consolidated groups was necessary. However, we do not find this theory any more convincing than petitioner's argument that Congress most likely assumed that the ACE calculations would be computed on a consolidated basis and that no separate explanation for life-nonlife consolidated groups was necessary. There simply is no clear indication of how Congress intended life-nonlife affiliated groups to calculate the ACE adjustment.

---

[6] Tax Reform Act of 1976, Pub. L. 94-455, sec. 1507(b)(3), 90 Stat. 1740.

[7] Tax Reform Act of 1986, Pub. L. 99-514, sec. 701, 100 Stat. 2320.

Respondent believes that his argument is supported by section 1503(c)(1), which provides:

> (1) In general.--If an election under section 1504(c)(2) is in effect for the taxable year and the <u>consolidated taxable income of the members of the group not taxed under section 801</u> [the nonlife subgroup] results in a <u>consolidated net operating loss</u> for such taxable year, then under regulations prescribed by the Secretary, the amount of such loss which cannot be absorbed in the applicable carryback periods against the taxable income of such members not taxed under section 801 [the nonlife subgroup] shall be taken into account in determining the <u>consolidated taxable income of the affiliated group</u> for such taxable year to the extent of 35 percent of such loss or 35 percent of the taxable income of the members taxed under section 801 [the life subgroup], whichever is less. * * * [Emphasis added.]

The term "consolidated" in section 1503(c)(1) is used to refer to both the separate subgroups and to the entire affiliated group. Furthermore, the term "consolidated" is generally used to refer to the subgroups throughout section 1.1502-47, Income Tax Regs. See sec. 1.1502-47(a)(2)(i) and (ii), (d)(3), (g)(1) and (2), (h), (k), (l), (m), (n), (o)(1)(i) and (ii), (2)(i) and (ii), Income Tax Regs.; cf. sec. 1.1502-47(a)(1), (b)(2)(i) and (ii), (d)(10), (f)(7), (g), (o)(1), (r), Income Tax Regs. Respondent argues that this undermines petitioner's argument that the use of the term "consolidated adjusted current earnings" in section 1.56(g)-1(n)(1)(i) and (3)(ii), Income Tax Regs., refers to the consolidated ACE of the entire affiliated group. We agree that the use of the term "consolidated" is ambiguous. However, in section 1503(c) and section 1.1502-47, Income Tax Regs., when the

term "consolidated" is used to refer to a subgroup it is immediately apparent because it is used in conjunction with a reference to a subgroup.  See sec. 1503(c)(1) ("consolidated taxable income of the members of the group not taxed under section 801"); sec. 1.1507-47(g)(1) ("nonlife consolidated taxable income") and (2) ("consolidated partial LICTI"), Income Tax Regs.  In the absence of any references to subgroups in section 1.56(g)-1(n), Income Tax Regs., we find it more likely that "consolidated adjusted current earnings" refers to the ACE of the entire consolidated group.

Respondent next argues that because section 1.56(g)-1(n)(3)(i), Income Tax Regs., references section 1.1502-11, Income Tax Regs., which is preempted by section 1.1502-47, Income Tax Regs., all references to a "group" in the section 56 and the ACE regulations should be read as referring to either the "life subgroup" or the "nonlife subgroup".  However, in the absence of any clear indication that this was Congress's intention, we decline to alter the plain meaning of section 56 and the ACE regulations by substituting references to subgroups for references that indicate the entire consolidated group.

Respondent argues alternatively that if the Court decides that it is appropriate to calculate the ACE adjustment using a consolidated method, the Court may wish to use section 1.1502-11, Income Tax Regs., instead of section 1.1502-47, Income Tax Regs.,

to calculate preadjustment AMTI.  This would require taxpayers to add the taxable incomes of the subgroups together to calculate preadjustment AMTI even if one subgroup has a negative post-ACE adjustment AMTI.  As discussed in more detail in section IV. C., because section 1.1502-47, Income Tax Regs., preempts any inconsistent consolidated return regulations, we find that section 1.1502-47(g), Income Tax Regs., preempts section 1.1502-11, Income Tax Regs., whenever the AMT requires a calculation of taxable income for life-nonlife consolidated groups for regular tax purposes, such as when calculating AMTI.  Sec. 1.1502-47(q), Income Tax Regs.  Therefore, respondent's alternative methodology using section 1.1502-11, Income Tax Regs., to calculate preadjustment AMTI is inappropriate.

Respondent argues as a third alternative that the Court may rule that the ACE adjustment should be calculated on a consolidated basis and that the loss limitation rules should apply when calculating AMTI as long as a consistent AMTI is used. Respondent's alternative methodology is illustrated in the appendix.  We believe that respondent's third alternative represents the best way to calculate the ACE adjustment.

IV.  Application of the Loss Limitation Rules to AMTI

   A.  Petitioner's Revised Methodology

Petitioner's revised methodology on the second issue is illustrated in the appendix.  Petitioner argues that the loss limitation rules apply when calculating preadjustment AMTI for purposes of comparing with ACE (lines 3 and 10 of petitioner's revised methodology in the appendix) but that they do not apply when calculating preadjustment AMTI for purposes of calculating ACE (line 4 of petitioner's revised methodology in the appendix).

Under petitioner's revised methodology, its 2001 AMTI for the consolidated group before the ATNOL deduction is about $525 million, compared to $526 million as it originally calculated.[8] Under both its revised and original calculations (both illustrated in the appendix), petitioner's 2001 AMTI is attributable solely to the life subgroup because the nonlife subgroup suffered an ATNOL in 2001, which will be carried back to offset the nonlife subgroup's gains in prior years.  Petitioner argues that under its revised methodology, the AMTI before the ATNOL deduction attributable to the nonlife subsidiary is negative $9 billion, compared to its original calculation of negative $5 billion.  These adjustments, combined with similar adjustments for 2002, would result in a larger NOL carryback to

---

[8] All figures in this section are for illustrative purposes only.  The parties agree that petitioner's actual tax liability or refund will be determined in a Rule 155 calculation.

prior years which would reduce petitioner's deficiency in 1996 and produce overpayments in 1997, 1998, and 1999.

For both 2001 and 2002, on line 3 of petitioner's methodology in the appendix "Preadjustment AMTI (to compare with ACE)" includes only the life subgroup's preadjustment AMTI because petitioner applied the loss limitation rules. Section 1.1502-47(g), Income Tax Regs., provides that the CTI of a life-nonlife consolidated group includes the separate CTIs of each of the subgroups, but neither subgroup's CTI may be less than zero. Therefore, because the nonlife subgroup had a negative CTI in both 2001 and 2002, its taxable income is treated as being zero for purposes of calculating the consolidated group's CTI.

However, on line 4 of petitioner's methodology for 2001 and 2002 in the appendix, "Preadjustment AMTI (to calculate ACE)", petitioner added the preadjustment AMTIs of the nonlife and life subgroups without applying the loss limitation rules. This is the source of the second issue. Respondent argues that if petitioner calculates its ACE adjustment using a consolidated method, petitioner must use the same preadjustment AMTI on lines 3 and 4. Petitioner's argument as to why its methodology is appropriate is discussed in section IV. C. and D.

Line 5, the section 56(g)(4) adjustments, represents the combined section 56(g)(4) adjustments of the consolidated group. In 2001 about $1 billion of the adjustments was attributable to

the nonlife subgroup and $200,000 was attributable to the life subgroup. On line 9 petitioner allocates the ACE adjustment between the nonlife and life subgroups according to the section 56(g)(4) adjustments attributable to prevent the distortion that would otherwise be caused when using a consolidated ACE adjustment when the loss limitation rule applies. See State Farm I at 355.

On line 10 as on line 3 petitioner applies the loss limitation rules and shows that petitioner's post-ACE adjustment AMTI for 2001 and 2002 for the consolidated group includes only the life subgroup's income and adjustments because the nonlife subgroup had no taxable income.

Lines 11 and 12 of petitioner's revised methodology for 2002 illustrate the use of the nonlife subgroup's ATNOL to offset part of the life subgroup's post-ACE adjustment AMTI pursuant to section 1503(c).

B. Respondent's Alternative Methodology

Respondent's alternative methodology (illustrated in the appendix) essentially adopts petitioner's revised methodology except that it applies the loss limitation rules to preadjustment AMTI for purposes of both calculating ACE and comparing with ACE. Therefore, the preadjustment AMTIs on lines 3 and 4 are the same. The use of consistent AMTIs results in much higher ACE adjustments on line 9 for 2001 and 2002 even though both

petitioner and respondent use the same figures for the section 56(g)(4) adjustments on line 5.

Respondent's alternative methodology yields the same post-ACE adjustment AMTIs for 2001 and 2002 as petitioner's original calculations.

C.  Determination of Preadjustment AMTI Used To Compare With ACE Under Section 56(g)(1)(B)

Petitioner argues that the ACE regulations, the life-nonlife consolidation regulations, and the State Farm I Rule 155 decision all support the application of the loss limitation rules in computing consolidated preadjustment AMTI.  If the loss limitation rules apply in computing consolidated preadjustment AMTI, then as shown on line 3 of petitioner's revised methodology in the appendix, petitioner's 2001 and 2002 preadjustment AMTI would include only the life subgroup's preadjustment AMTI.  The nonlife subgroup's AMTI was negative, and section 1.1502-47(g)(1), Income Tax Regs., provides that in calculating the consolidated group's CTI the nonlife subgroup's taxable income may not be less than zero.  Respondent argues that if the Court decides that a consolidated methodology for calculating the ACE adjustment is appropriate, the Court may choose to calculate preadjustment AMTI according to the principles of section 1.1502-11, Income Tax Regs., because of the reference to section 1.1502-11, Income Tax Regs., in section 1.56(g)-1(n)(3)(i), Income Tax Regs.  In that case, petitioner would be required to add the

preadjustment AMTIs of the subgroups without application of the loss limitation rules.

Section 1.56(g)-1(n)(3)(i), Income Tax Regs., defines "Consolidated pre-adjustment alternative minimum taxable income" as starting with "the consolidated taxable income (as defined in § 1.1502-11) of a consolidated group for the taxable year". However, section 1.1502-47(q), Income Tax Regs., provides that section 1.1502-47, Income Tax Regs., preempts any inconsistent rules in the other consolidated return regulations, which include section 1.1502-11, Income Tax Regs. Therefore, the reference in section 1.56(g)-1(n)(3)(i), Income Tax Regs., should be read as a reference to section 1.1502-47(g), Income Tax Regs., which defines CTI as including only the positive taxable incomes (if any) of each subgroup and phase 3 income. Therefore, because in 2001 and 2002 the nonlife subgroup had a negative AMTI, the members of the nonlife subgroup for 2001 and 2002 would be assigned zero values for their individual preadjustment AMTIs. However, the negative AMTI (or ATNOL) of the nonlife subgroup is not lost but is carried back to a prior year, used as a current year offset against consolidated partial LICTI, or carried forward to a future year.

The Court addressed a similar issue in State Farm I when the parties disputed the Rule 155 computation. As discussed above, the Court held that the starting point for preadjustment AMTI is

the taxable income of a taxpayer for regular tax purposes. See also sec. 55(b)(2). Because life-nonlife consolidated groups calculate their taxable income for regular tax purposes under section 1.1502-47(g), Income Tax Regs., petitioner was required to calculate its preadjustment AMTI according to the same principles. Petitioner argues that the same logic applies in this case because the preadjustment AMTI used to compare with ACE is also based on taxable income as calculated for regular tax purposes.

The legislative history accompanying the 1986 revisions of the AMT supports petitioner's argument:[9]

> It is clarified that, in light of the parallel nature of the regular tax and minimum tax systems, any limitations applying for regular tax purposes to the use by a consolidated group of NOLs or current year losses (e.g., section 1503) apply for minimum tax purposes as well. * * * [H. Conf. Rept. 99-841 (Vol. II), supra at II-283, 1986-3 C.B. (Vol. 4) at 283.]

Respondent argues that petitioner incorrectly applies the loss limitation rules on line 3 of its revised methodology. Respondent argues that section 1.1502-47(g), Income Tax Regs., applies only after any negative nonlife carrybacks have been

---

[9] Petitioner also argues that sec. 1.1502-55(a)(2), Proposed Income Tax Regs., 57 Fed. Reg. 62257 (Dec. 30, 1992), supports its argument that preadjustment AMTI to be compared with ACE should be calculated by applying the loss limitation rules. However, because proposed regulations are accorded little, if any, deference, we decline to address them here. See Perano v. Commissioner, 130 T.C. 93, 100 (2008); Estate of Ratliff v. Commissioner, 101 T.C. 276, 278 (1993).

taken into account and setoffs against current year life subgroup income have been applied. Respondent argues that section 56(a)(4) provides that the ATNOL deduction is allowed in place of the NOL deduction under section 172; therefore, the loss limitation rules apply only after any final ATNOL for the taxable year has been determined and after the amount of any carryback of such a loss against the positive taxable income of the same subgroup has been determined.

It is evident from petitioner's briefs and calculation of AMTI for 2000 that petitioner's revised methodology applies the loss limitation rules after calculating the post-ACE adjustment AMTI of each of the subgroups and determining whether either subgroup had an ATNOL. In 2000 the nonlife subgroup had an NOL for regular tax purposes but a positive post-ACE adjustment AMTI. Because neither subgroup had an ATNOL, petitioner did not apply the loss limitation rules in 2000.

Respondent does not dispute the accuracy of the result of petitioner's calculations for 2000, nor does respondent argue that the discrepancies between petitioner's and respondent's calculations for 2001 and 2002 are caused by mistakes in the order in which petitioner applied the loss limitation rules and calculated the nonlife subgroup's ATNOLs.[10]  Furthermore, section

---

[10] While respondent disagrees with petitioner's method of calculating the ACE adjustment and post-ACE adjustment AMTI for
(continued...)

1.56(g)-1(a)(6)(i), Income Tax Regs., requires preadjustment AMTI to be determined without the ATNOL deduction under section 56(a)(4). Therefore, we do not find that section 56(a)(4) prevents taxpayers from respecting the loss limitation rules when calculating preadjustment AMTI.

Because (1) there is no dispute that under section 55(b)(2) the starting point for preadjustment AMTI is the taxpayer's taxable income for regular tax purposes; (2) section 1.1502-47(g), Income Tax Regs., requires that when calculating CTI of a life-nonlife consolidated group for regular tax purposes, the taxable income of neither subgroup be less than zero; and (3) respondent has not convinced us that petitioner has incorrectly applied the loss limitation rules to preadjustment AMTI to compare with ACE, we find that petitioner properly used the preadjustment AMTIs of both the life and nonlife subgroups to compare with ACE in 1996 through 2000 and properly used the preadjustment AMTI of only the life subgroup to compare with ACE in 2001 and 2002.

---

[10](...continued)
2001 and 2002, it appears that the discrepancies between the parties' calculations is eliminated if petitioner uses a consistent preadjustment AMTI.

D. Determination of Preadjustment AMTI Used To Calculate ACE Under Section 56(g)(3)

While petitioner argues that the loss limitation rules apply when determining preadjustment AMTI to compare with ACE, it argues that the loss limitation rules do not apply when calculating ACE, despite the fact that ACE essentially equals preadjustment AMTI plus the adjustments made under section 56(g)(4). See sec. 56(g)(3).

Petitioner argues that there is no clear guidance as to how a life-nonlife consolidated group should calculate ACE but that section 1.1502-55(b)(3)(ii), Proposed Income Tax Regs., 57 Fed. Reg. 62258 (Dec. 30, 1992), supports its position. That section provides:

> (ii) Consolidated ACE.--(A) In general.-- Consolidated ACE is determined in accordance with the principles of § 1.1502-11, taking into account the adjustments and preferences provided in sections 56, 57, and 58. The consolidated NOL deduction and the consolidated section 247 deduction, however, are not taken into account in computing consolidated ACE.

> (B) Separate ACE.--In computing consolidated ACE, each member must compute its separate ACE. The separate ACE of a member is the separate pre-adjustment AMTI of the member, as defined in paragraph (b)(2)(ii) of this section, adjusted as provided in section 56(g) and § 1.56(g)-1. [Emphasis added.]

Petitioner argues that this section of the proposed regulations requires that each member calculate its own ACE and that each member use its true preadjustment AMTI even if the member is part of a subgroup that has a negative aggregate

preadjustment AMTI (as opposed to treating its AMTI as zero in such cases, as respondent advocates). If we accept petitioner's argument, the AMTI referred to in section 56(g)(3), which is used to calculate ACE (line 4 of petitioner's revised methodology), must be calculated differently from the AMTI referred to in section 56(g)(1), which is used to compare with ACE in calculating the ACE adjustment (line 3 of petitioner's revised methodology). Petitioner believes that this is the correct result because ACE is intended to measure true economic income while AMTI is intended to measure taxable income.

Respondent argues simply, but persuasively, that there is no basis in the Code, the regulations, or any proposed regulations for applying the loss limitation rules to preadjustment AMTI when comparing it to ACE, but not applying the loss limitation rules to preadjustment AMTI when calculating ACE, regardless of whether ACE is calculated by aggregating the separate ACE of each member or otherwise.

We agree with respondent. The general purpose of the ACE adjustment is to tax reported profits that would otherwise be untaxed, see H. Conf. Rept. 99-841 (Vol. II), supra at II-272, 1986-3 C.B. (Vol. 4) 272, and the goal of the AMT was to make taxable income more reflective of economic income, see S. Rept. 99-313, at 519 (1986), 1986-3 C.B. (Vol. 3) 1, 518-519. However, the general purpose of the ACE adjustment is not sufficient to

overcome the plain language of the Code and the regulations that treats "preadjustment AMTI" as a term with a single meaning.

As can be seen from the charts illustrating petitioner's position in the appendix, by using different AMTIs to compare with ACE and to calculate ACE, petitioner is not making its taxable income reflect its true economic income.  For example, as petitioner points out on brief, the consolidated group suffered an economic loss of over $4 billion in 2001, yet under respondent's position petitioner has positive AMTI of about $526 million.  However, even under petitioner's revised methodology, petitioner still has a positive postadjustment AMTI of almost $525 million.  Petitioner may not avoid this result without completely disregarding the loss limitation rules because the life subgroup had substantial taxable income in 2001 despite the nonlife subgroup's losses.  However, by using different AMTIs to compare with ACE and to calculate ACE, petitioner increases its ATNOL for the nonlife subgroup from $5 billion to over $9 billion despite the fact that the nonlife subgroup's economic loss was actually only $5 billion.  Petitioner does not argue, nor would the record support, that either the consolidated group or the nonlife subgroup alone suffered a $9 billion economic loss in 2001 that would justify allowing petitioner such a large ATNOL. Petitioner cannot rely upon logic to contradict the plain meaning of section 56(g) and its accompanying regulations to achieve an

illogical result. A similar, although less dramatic, inflation of the nonlife subgroup's ATNOL also occurs in 2002 under petitioner's revised methodology.

Petitioner argues that this inflation is permissible because its method affects only timing, not the amount of the total tax imposed on petitioner's consolidated group. Petitioner believes this to be true because the section 53 minimum tax credit allows a corporation to reduce its current year regular taxable income by the amount of an AMT paid in prior years. However, petitioner does not explain how treating the AMT as merely a prepayment of regular tax renders allowing it an NOL that is billions of dollars larger than either its regular tax NOL or its economic loss a minor timing issue.

Further, we find that the proposed regulations do not support petitioner's argument. Section 1.1502-55(b)(3)(i) and (ii), Proposed Income Tax Regs., 57 Fed. Reg. 62258 (Dec. 30, 1992), refers to paragraph (b)(2) for the definition of preadjustment AMTI for purposes of both comparing to ACE to determine the ACE adjustment and calculating consolidated ACE. Paragraph (b)(2) of the proposed regulations defines consolidated preadjustment AMTI as the aggregate of the separate preadjustment AMTIs of each member, just as consolidated ACE is defined as the aggregate of the separate ACEs of each member. There is no provision in the proposed regulations that indicates that life-

nonlife consolidated groups should treat the AMTIs of members of a subgroup with an ATNOL as zero for purposes of determining consolidated preadjustment AMTI but then use the actual AMTIs of members of the same subgroup when calculating consolidated ACE.

Petitioner cites no evidence that Congress intended that the term "preadjustment AMTI" should have a different meaning when used to compare with ACE and when used to calculate ACE, either as a general matter or for life-nonlife subgroups. Without such evidence we will not be guided by petitioner's interpretation of the proposed regulations. See Estate of Wallace v. Commissioner, 95 T.C. 525, 547 (1990), affd. 965 F.2d 1038 (11th Cir. 1992).

Petitioner argues that under Atlantic Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433 (1932), it is possible that a single term may have different meanings when used in different circumstances or for different purposes. While we agree with this general proposition, petitioner has not persuaded the Court that in the case of preadjustment AMTI "there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent." Id. To the contrary, section 1.56(g)-1(n)(3)(i) and (ii), Income Tax Regs., provides that the following definitions of consolidated preadjustment AMTI and consolidated ACE apply to consolidated groups and suggests a single definition:

(3) Definitions.--(i) <u>Consolidated pre-adjustment alternative minimum taxable income</u>.--Consolidated pre-adjustment alternative minimum taxable income is the consolidated taxable income (as defined in [section] 1.1502-11) of a consolidated group for the taxable year, determined with the adjustments provided in sections 56 and 58 (except for the adjustment for adjusted current earnings and the alternative tax net operating loss determined under section 56(a)(4)) and increased by the preference items described in section 57.

(ii) Consolidated adjusted current earnings.--<u>The consolidated adjusted current earnings of a consolidated group is the consolidated pre-adjustment alternative minimum taxable income of the consolidated group for the taxable year, adjusted as provided in section 56(g) and this section</u>. [Emphasis added.]

Given the proximity of these two definitions in the regulations, it would strain all reason if the reference to preadjustment AMTI in the definition of consolidated ACE were not to the definition of preadjustment AMTI in the paragraph above it.

Finally, petitioner argues that when the Commissioner fails to issue clear and unambiguous regulations from which a taxpayer can ascertain the prescribed method for calculating its tax liability, the taxpayer may make the computation using any reasonable method it selects.  See <u>Conn. Gen. Life Ins. Co. v. Commissioner</u>, 177 F.3d 136, 144 (3d Cir. 1999), affg. 109 T.C. 100 (1997); <u>Gottesman & Co. v. Commissioner</u>, 77 T.C. at 1157-1158.  However, as discussed above, we do not find petitioner's calculation to be reasonable.

Petitioner alternatively argues that if the Court determines that the loss limitation rules must be respected when calculating

ACE, then if a subgroup has a negative ACE it should be excluded from the current year ACE computation and carried back to offset any positive ACE of that subgroup in prior years. However, there is no provision in the Code or the regulations for either excluding or carrying back negative ACEs. The loss limitation rules apply to taxable income, not ACE. Therefore, the loss limitation rules apply to the determination of preadjustment AMTI when calculating ACE, but they do not exclude negative ACEs. As illustrated by respondent's alternative methodology, because consolidated ACE is allocated between the subgroups when determining ATNOLs of the subgroups, no negative ACE will be lost as petitioner contends.

Because we accept petitioner's argument that the loss limitation rules apply to consolidated preadjustment AMTI as defined in section 1.56(g)-1(n)(3)(i), Income Tax Regs. (line 3 of petitioner's revised methodology), petitioner must also apply the loss limitation rules to the AMTI referenced when calculating consolidated ACE, defined in section 1.56(g)-1(n)(3)(ii), Income Tax Regs. (line 4 of petitioner's revised methodology).

V. Conclusion

We hold that petitioner must calculate its ACE and ACE adjustment on a consolidated basis for its entire consolidated group. However, petitioner must use a consistent preadjustment

AMTI that applies the loss limitation rules when calculating its ACE, ACE adjustment, and post-ACE adjustment AMTI.

We have considered all of the arguments made by the parties. To the extent not discussed herein, we find them to be moot or without sufficient merit to alter our decisions.

Based on the foregoing,

<u>An appropriate order will be issued</u>.

APPENDIX

The figures in this Appendix are for illustrative purposes only.  The parties agree that after all the issues in the instant case have been resolved, computations in accordance with Rule 155 will be necessary.

| Petitioner's Original Calculations for 2001 | | | |
|---|---|---|---|
| | Nonlife Subgroup | Life Subgroup | Consolidated |
| Calculation of Preadjustment AMTI | | | |
| 1. Regular taxable income (loss) before NOL deduction | ($5,777,523,614) | $526,283,059 | $526,283,059 |
| 2. Adjustments and preferences | (20,772,240) | (629,289) | (629,289) |
| 3. Preadjustment AMTI (to compare with ACE) | (5,798,295,854) | 525,653,770 | 525,653,770 |
| Calculation of ACE | | | |
| 4. Preadjustment AMTI (to calculate ACE) | (5,798,295,854) | 525,653,770 | 525,653,770 |
| 5. Sec. 56(g)(4) adjustments | 1,032,435,020 | 218,868 | 218,868 |
| 6. ACE (lines 4 + 5) | (4,765,860,834) | 525,872,638 | 525,872,638 |
| Calculation of AMTI | | | |
| 7. Excess of ACE over preadjustment AMTI (line 6 - line 3) | 1,032,435,020 | 218,868 | 218,868 |
| 8. 75% of excess | 774,326,265 | 164,151 | 164,151 |
| 9. ACE adjustment | 774,326,265 | 164,151 | 164,151 |
| 10. AMTI before alternative tax NOL deduction (lines 3 + 9) | (5,023,969,589) | 525,817,921 | 525,817,921 |

| Petitioner's Original Calculations for 2002 | | | |
|---|---|---|---|
| | Nonlife Subgroup | Life Subgroup | Consolidated |
| Calculation of Preadjustment AMTI | | | |
| 1. Regular taxable income (loss) before NOL deduction | ($2,536,610,433) | $596,480,881 | $596,480,881 |
| 2. Adjustments and preferences | (50,621,424) | (104,660) | (104,660) |
| 3. Preadjustment AMTI (to compare with ACE) | (2,587,231,857) | 596,376,221 | 596,376,221 |
| Calculation of ACE | | | |
| 4. Preadjustment AMTI (to calculate ACE) | (2,587,231,857) | 596,376,221 | 596,376,221 |
| 5. Sec. 56(g)(4) adjustments | 969,200,239 | 1,745,057 | 1,745,057 |
| 6. ACE (lines 4 + 5) | (1,618,031,618) | 598,121,278 | 598,121,278 |
| Calculation of AMTI | | | |
| 7. Excess of ACE over preadjustment AMTI (lines 6 – 3) | 969,200,239 | 1,745,057 | 1,745,057 |
| 8. 75% of excess | 726,900,179 | 1,308,793 | 1,308,793 |
| 9. ACE adjustment | 726,900,179 | 1,308,793 | 1,308,793 |
| 10. AMTI before alternative tax NOL deduction (lines 3 + 9) | (1,860,331,678) | 597,685,014 | 597,685,014 |
| 11. Sec. 1503(c) 35% offset | --- | --- | --- |
| 12. AMTI after 35% offset | --- | --- | --- |

| Petitioner's Revised Methodology for 2001 | | | |
|---|---|---|---|
| | Nonlife Subgroup | Life Subgroup | Consolidated |
| Calculation of Preadjustment AMTI | | | |
| 1. Regular taxable income (loss) before NOL deduction | ($5,777,523,614) | $526,283,059 | $526,283,059 |
| 2. Adjustments and preferences | (20,772,240) | (629,289) | (629,289) |
| 3. Preadjustment AMTI (to compare with ACE) | (5,798,295,854) | 525,653,770 | 525,653,770 |
| Calculation of ACE | | | |
| 4. Preadjustment AMTI (to calculate ACE) | (5,272,642,084) | | (5,272,642,084) |
| 5. Sec. 56(g)(4) adjustments | 1,032,653,888 | | 1,032,653,888 |
| 6. ACE (lines 4 + 5) | (4,239,988,196) | | (4,239,988,196) |
| Calculation of AMTI | | | |
| 7. Excess of ACE over preadjustment AMTI (line 6 - line 3) | --- | --- | (4,765,641,966) |
| 8. 75% of excess | --- | --- | (3,574,231,475) |
| 9. ACE adjustment | (3,573,473,926) | (757,548) | (757,548) |
| 10. AMTI before alternative tax NOL deduction (lines 3 + 9) | (9,371,769,780) | 524,896,222 | 524,896,222 |

| Petitioner's Revised Methodology for 2002 | | | |
|---|---|---|---|
| | Nonlife Subgroup | Life Subgroup | Consolidated |
| Calculation of Pre-Adjustment AMTI | | | |
| 1. Regular taxable income (loss) before NOL deduction | ($2,536,610,433) | $596,480,881 | $596,480,881 |
| 2. Adjustments and preferences | (50,621,424) | (104,660) | (104,660) |
| 3. Preadjustment AMTI (to compare with ACE) | (2,587,231,857) | 596,376,221 | 596,376,221 |
| Calculation of ACE | | | |
| 4. Preadjustment AMTI (to calculate ACE) | (1,990,855,636) | | (1,990,855,636) |
| 5. Sec. 56(g)(4) adjustments | 970,945,296 | | 970,945,296 |
| 6. ACE (Lines 4 + 5) | (1,019,910,340) | | (1,019,910,340) |
| Calculation of AMTI | | | |
| 7. Excess of ACE over preadjustment AMTI (line 6 - line 3) | --- | --- | (1,616,286,561) |
| 8. 75% of excess | --- | --- | (1,212,214,921) |
| 9. ACE adjustment | (1,210,036,236) | (2,178,685) | (2,178,685) |
| 10. AMTI before alternative tax NOL deduction (lines 3 + 9) | (3,797,268,093) | 594,197,536 | 594,197,536 |
| 11. Sec. 1503(c) 35% offset | | (207,969,138) | (207,969,138) |
| 12. AMTI after 35% offset | | 386,228,398 | 386,228,398 |

| Respondent's Position: Petitioner's Methodology Using Consistent Preadjustment AMTI for 2001 | | | |
|---|---|---|---|
| | Nonlife Subgroup | Life Subgroup | Consolidated |
| Calculation of Pre-Adjustment AMTI | | | |
| 1. Regular taxable income (loss) before NOL deduction | ($5,777,523,614) | $526,283,059 | $526,283,059 |
| 2. Adjustments and preferences | (20,772,240) | (629,289) | (629,289) |
| 3. Preadjustment AMTI | (5,798,295,854) | 525,653,770 | 525,653,770 |
| Calculation of ACE | | | |
| 4. Preadjustment AMTI | --- | --- | 525,653,770 |
| 5. Sec. 56(g)(4) adjustments | --- | --- | 1,032,653,888 |
| 6. ACE (lines 4 + 5) | --- | --- | 1,558,307,658 |
| Calculation of AMTI | | | |
| 7. Excess of ACE over preadjustment AMTI (line 6 - line 3) | --- | --- | 1,032,653,888 |
| 8. 75% of excess | --- | --- | 774,490,416 |
| 9. ACE adjustment | 774,326,265 | 164,151 | 774,490,416 |
| 10. AMTI before alternative tax NOL deduction (lines 3 + 9) | (5,023,969,589) | 525,817,921 | 525,817,921 |
| 11. Consolidated ATNOL deduction | --- | --- | --- |
| 12. AMTI before limiting use of current year AMT loss (lines 10 + 11) | (5,023,969,589) | --- | |
| Calculation of Limitation on Use of Current Year AMT Loss | | | |
| 13. Current year AMT loss subject to limitation | (5,023,969,589) | --- | |

| 14. Consolidated ATNOL carryback to 1996 & 1997 | (5,023,969,589) | --- | |
|---|---|---|---|
| 15. Available current year AMT loss (lines 13 - 14) | --- | --- | |
| 16. Portion of available current year AMT loss taken into account (the lesser of 35% of zero and 35% of $525,817,921) | --- | --- | |
| Calculation of AMTI After Limiting Use of Current Year AMT Loss | | | |
| 17. Consolidated AMTI (loss) after limitation per subgroup | --- | 525,817,921 | |
| 18. Consolidated AMTI | | | 525,817,921 |

| Respondent's Position: Petitioner's Methodology Using Consistent Preadjustment AMTI for 2002 | | | |
|---|---|---|---|
| | Nonlife Subgroup | Life Subgroup | Consolidated |
| Calculation of Pre-Adjustment AMTI | | | |
| 1. Regular taxable income (loss) before NOL deduction | ($2,536,610,433) | $596,480,881 | $596,480,881 |
| 2. Adjustments and preferences | (50,621,424) | (104,660) | (104,660) |
| 3. Preadjustment AMTI | (2,587,231,857) | 596,376,221 | 596,376,221 |
| Calculation of ACE | | | |
| 4. Preadjustment AMTI | --- | --- | 596,376,221 |
| 5. Sec. 56(g)(4) adjustments | --- | --- | 970,945,296 |
| 6. ACE (lines 4 + 5) | --- | --- | 1,567,321,517 |
| Calculation of AMTI | | | |
| 7. Excess of ACE over preadjustment AMTI (line 6 - line 3) | --- | --- | 970,945,296 |
| 8. 75% of excess | --- | --- | 728,208,972 |
| 9. ACE adjustment | 726,900,179 | 1,308,793 | 728,208,972 |
| 10. AMTI before alternative tax NOL deduction (lines 3 + 9) | (1,860,331,678) | 597,685,014 | 597,685,014 |
| 11. Consolidated alternative tax NOL deduction | --- | --- | --- |
| 12. AMTI before limiting use of current year AMT loss (lines 10 + 11) | (1,860,331,678) | 597,685,014 | 597,685,014 |
| Calculation of Limitation on Use of Current Year AMT Loss | | | |
| 13. Current year AMT loss subject to limitation | (1,860,331,678) | --- | |

| | | | |
|---|---|---|---|
| 14. Consolidated alternative tax NOL carryback to 1997 | (1,860,331,678) | --- | |
| 15. Available current year AMT loss (lines 13 - 14) | --- | --- | |
| 16. Portion of available current year AMT loss taken into account (lesser of 35% of zero or 35% of $597,685,014) | --- | --- | |
| 17. Consolidated AMTI (loss) after limitation per subgroup | --- | 597,685,014 | |
| 18. Consolidated AMTI | | | 597,685,014 |